**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| RUSSELL LAMB, on behalf of himself and all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | |
| WEL COMPANIES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Russell Lamb ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant Wel Companies, Inc. ("Defendant" or "Lands' End") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsels' investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. This action arises from Defendant's failure to secure the personally identifiable information ("PII")[1] of Plaintiff and the members of the proposed Class.

2. Defendant distributes food, beverages, and other products across the country through its trucking services.

3. On January 31, 2025, Defendant detected that an unauthorized third party gained access to its network.

---

[1] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8).

4. Through an investigation, on November 12, 2025, nearly 9 months after initially detecting the unauthorized activity in its network, Defendant confirmed that personal information belonging to current and former contractors and employees was accessed. The impacted information included, but is not limited to, names and Social Security numbers (the "Private Information").

5. On or around November 18, 2025, Defendant issued a notice of public disclosure about the Data Breach.

6. Defendant waited nine months before informing Class Members about the Breach even though Plaintiff and Class Members had their most sensitive personal information accessed and abused, causing them to suffer ascertainable losses in the form of identity theft and fraud, the loss of the benefit of their bargain, and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

7. Defendant's failure to timely detect and report the Data Breach made the impacted individuals vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

8. Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of the Data Breach.

9. In failing to adequately protect Plaintiff's and the Class's Private Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendant violated state and federal law and harmed an unknown number of its current and former contractors and employees.

2

10.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures.

11.     As a direct and proximate result of the Data Breach, Plaintiff and Class Members have suffered actual and present injuries, including but not limited to: (a) present, certainly impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the stolen Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) "out of pocket" costs incurred due to actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

12.     Accordingly, Plaintiff, on behalf of themselves and a class of similarly situated individuals, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

13.     Plaintiff is a natural person, resident and citizen Chinquapin, North Carolina.

14.     Defendant is a Wisconsin corporation with its headquarters and principal place of business located at 1625 S Broadway, De Pere, Wisconsin 54115.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

16.    This Court has personal jurisdiction over Defendant because its principal place of business is in this District.

17.    Venue is proper under 18 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## FACTUAL BACKGROUND

### A.    Defendant's Business

18.    Defendant distributes food, beverages, and other products across the country through its trucing services.

19.    Upon information and belief, Plaintiff and Class Members are current and former contractors and employees of Defendant, who entrusted their PII with Defendant as a condition of employment.

20.    The information held by Defendant in its computer systems included the unencrypted PII of Plaintiff and Class Members.

21.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members relied on the sophistication of Defendant to keep their PII confidential and securely maintained, to use this information for necessary

purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their PII and demand security to safeguard their PII.

22. Defendant had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep consumer's PII safe and confidential.

23. Defendant had obligations created by FTC Act, contract, industry standards, and upon information and belief representations made to its contractors and employees and thereby Plaintiff and Class Members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

24. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without the required submission of PII, Defendant could not have contractors and employees and conduct its business.

25. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.


**B.     The Data Breach**

26. According to Defendant's public disclosure about the Data Breach, Defendant admits that on January 31, 2025, it detected that an unauthorized third party had gained access to its network. Following an investigation, Defendant learned that some data from its network had been accessed, including data that could contain personal information.

27. On November 12, 2025, Defendant confirmed that the PII belonging to current and former contractors and employees was accessed in the Data Breach.

28.     Clearly, Defendant failed to adequately protect Plaintiff's and Class Members PII—and failed to even encrypt or redact this highly sensitive PII. This unencrypted, unredacted PII was compromised, published, and then sold on the dark web, due to Defendant's negligent and/or careless acts and omissions and their utter failure to protect contractors' and employees' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

29.     Defendant has failed to provide Plaintiff and Class Members with timely and adequate notice including, but not limited to, information about how the Data Breach occurred and even when it occurred and when Plaintiff's and Class Members's information was released onto the dark web.

**C.     Defendant Acquires, Collects, and Stores Plaintiff's and the Class's PII**

30.     As part of its business, Defendant acquires the sensitive PII of contractors and employees, including Plaintiff and Class Members.

31.     Defendant retains and stores this information and derives a substantial economic benefit from the PII that they collect. But for the collection of Plaintiff's and Class Members' PII, Defendant would be unable to perform its services.

32.     By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII from disclosure.

33.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and maintained

6

securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

34.     Defendant could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class Members.

35.     Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D.     Defendant Failed to Comply with Regulatory Requirements and Standards**

36.     Federal and state regulators have established security standards and issued recommendations to temper data breaches and the resulting harm to consumers and employees. There are a number of state and federal laws, requirements, and industry standards governing the protection of Private Information.

37.     For example, at least 24 states have enacted laws addressing data security practices that require businesses that own, license, or maintain Private Information about a resident of that state to implement and maintain "reasonable security procedures and practices" and to protect Private Information from unauthorized access.

38.     Additionally, cybersecurity firms have promulgated a series of best practices that at a minimum should be implemented by sector participants including, but not limited to: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting of physical security systems; protecting against any possible communication system; and training staff regarding critical points.[2]

---

[2] *See Addressing BPO Information Security: A Three-Front Approach*, DATAMARK, INC. (Nov. 2016), https://insights.datamark.net/addressing-bpo-information-security.

39.     The FTC has issued several guides for businesses, highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be considered for all business decision-making.[3]

40.     Under the FTC's 2016 *Protecting Personal Information: Guide for Business* publication, the FTC notes that businesses should safeguard the personal information they retain; properly dispose of unnecessary personal information; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to rectify security issues.[4]

41.     The guidelines also suggest that businesses use an intrusion detection system to expose a breach as soon as it happens, monitor all incoming traffic for activity indicating someone is trying to hack the system, watch for large amounts of data being siphoned from the system, and have a response plan in the event of a breach.

42.     The FTC advises companies to not keep information for periods of time longer than needed to authorize a transaction, restrict access to private information, mandate complex passwords to be used on networks, utilize industry-standard methods for security, monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[5]

43.     The FTC has brought enforcement actions against companies for failing to adequately and reasonably protect consumer data, treating the failure to do so as an unfair act or practice barred by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

---

[3] *Start With Security*, Fed. Trade Comm'n ("FTC"), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[4] *Protecting Personal Information: A Guide for Business*, FTC, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.
[5] *Id.*

Orders originating from these actions further elucidate the measures businesses must take to satisfy their data security obligations.

44. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

45. Defendant's failure to verify that it had implemented reasonable security measures constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

### E. Defendant Failed to Comply with Industry Practices

46. Various cybersecurity industry best practices have been published and should be consulted as a go-to resource when developing an organization's cybersecurity standards. The Center for Internet Security ("CIS") promulgated its Critical Security Controls, which identify the most commonplace and essential cyber-attacks that affect businesses every day and proposes solutions to defend against those cyber-attacks.[6] All organizations collecting and handling Private Information, such as Defendant, are strongly encouraged to follow these controls.

47. Further, the CIS Benchmarks are the overwhelming option of choice for auditors worldwide when advising organizations on the adoption of a secure build standard for any governance and security initiative, including PCI DSS, NIST 800-53, SOX, FISMA, ISO/IEC 27002, Graham Leach Bliley and ITIL.[7]

48. Several best practices have been identified that a minimum should be implemented by companies like Defendant, including but not limited to securely configuring business software, managing access controls and vulnerabilities to networks, systems, and software, maintaining

---

[6] Center for Internet Security, *Critical Security Controls*, at 1 (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.
[7] *See CIS Benchmarks FAQ*, Center for Internet Security, https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq/.

network infrastructure, defending networks, adopting data encryption while data is both in transit and at rest, and securing application software.[8]

49.     Defendant failed to follow these and other industry standards to adequately protect the Private Information of Plaintiff and Class Members.

**F.    Defendant Owed Plaintiff and Class Members a Common Law Duty to Safeguard their Private Information**

50.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant's duty owed to Plaintiff and Class Members obligated it to provide reasonable data security, including consistency with industry standards and requirements, and to ensure its computer systems, networks, and protocols adequately protected Plaintiff's and Class Members' Private Information.

51.     Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

52.     Defendant owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner and act upon data security warnings and alerts in a timely fashion.

53.     Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

---

[8] *See* Center for Internet Security, *Critical Security Controls* (May 2021), https://learn.cisecurity.org/CIS-Controls-v8-guide-pdf.

54.     Defendant owed a duty of care to Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

55.     Defendant failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized disclosure. Defendant's actions and omissions represent a flagrant disregard of Plaintiff's and Class Members' rights.

**G.     Plaintiff and Class Members Suffered Common Injuries and Damages due to Defendant's Conduct**

56.     Defendant's failure to implement or maintain adequate data security measures for Plaintiff's and Class Members' Private Information directly and proximately injured Plaintiff and Class Members by the resulting disclosure of their Private Information in the Data Breach.

57.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen fraudulent use of that information and damage to victims may continue for years.

58.     Plaintiff and Class Members are also at a continued risk because their Private Information remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect the Private Information in its systems.

59.     As a result of Defendant's delay between identification of the Data Breach in January 2025 through the notice of the Data Breach sent to affected persons in November 2025, the risk of fraud for Plaintiff and Class Members increased exponentially.

60.     As a result of Defendant's ineffective and inadequate data security practices, the resulting Data Breach, and the foreseeable consequences of their Private Information ending up in criminals' possession, the risk of identity theft to Plaintiff and Class Members has materialized

and is imminent, and they have all sustained actual injuries and damages, including, without limitation, (a) invasion of privacy; (b) financial costs incurred mitigating the materialized risk and imminent threat of identity theft; (c) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft; (d) financial costs incurred due to actual identity theft; (e) loss of time incurred due to actual identity theft; (f) deprivation of value of their Private Information; (g) loss of the benefit of their bargain with Defendant; (h) emotional distress including anxiety and stress in dealing with the Data Breach's aftermath; and (i) the continued risk to their sensitive Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information it collects and maintains.

### The Risk of Identity Theft to Plaintiff and Class Members is Present and Ongoing

61.     Plaintiff and Class Members are at a heightened risk of identity theft for years to come because of the Data Breach.

62.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

63.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal individuals' personal data to monetize the information.

---

[9] 17 C.F.R. § 248.201 (2013).

[10] *Id.*

Criminals monetize the data by selling the stolen information on the internet black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

64.     The dark web is an unindexed layer of the internet that requires special software or authentication to access. Criminals in particular favor the dark web as it offers a degree of anonymity to visitors and website publishers. Unlike the traditional or "surface" web, dark web users need to know the web address of the website they wish to visit in advance. For example, on the surface web, the CIA's web address is cia.gov, but on the dark web the CIA's web address is ciadotgov4sjwlzihbbgxnqg3xiyrg7so2r2o3lt5wz5ypk4sxyjstad.onion. This prevents dark web marketplaces from being easily monitored by authorities or accessed by those not in the know.

65.     A sophisticated black market exists on the dark web where criminals can buy or sell malware, firearms, drugs, and frequently, personal and medical information like the Private Information at issue here. The digital character of Private Information stolen in data breaches lends itself to dark web transactions because it is immediately transmissible over the internet and the buyer and seller can retain their anonymity. The sale of a firearm or drugs on the other hand requires a physical delivery address. Nefarious actors can readily purchase usernames and passwords for online streaming services, stolen financial information and account login credentials, and Social Security numbers, dates of birth, and medical information. As Microsoft warns "[t]he anonymity of the dark web lends itself well to those who would seek to do financial harm to others."[11]

---

[11] *What is the Dark Web?* – Microsoft 365, available at https://www.microsoft.com/en-us/microsoft-365-life-hacks/privacy-and-safety/what-is-the-dark-web (last visited Nov. 25, 2025).

66.     The unencrypted Private Information of Plaintiff and Class Members will end up for sale on the dark web because that is the *modus operandi* of hackers. In addition, unencrypted and detailed Private Information may fall into the hands of companies that will use it for targeted marketing without the approval of Plaintiff and Class Members. Unauthorized individuals can easily access the Plaintiff's and Class Members' Private Information.

67.     Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or to track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

68.     For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches are often the starting point for these additional targeted attacks on the victims.

69.     Identity thieves can also use an individual's personal data and Private Information to obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's information, rent a house or receive medical services in the victim's name, and

may even give the victim's personal information to police during an arrest resulting in an arrest warrant issued in the victim's name.[12]

70.    One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[13]

71.    With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

72.    The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

---

[12] *Identity Theft and Your Social Security Number*, Social Security Administration, 1 (2018), https://www.ssa.gov/pubs/EN-05-10064.pdf.

[13] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm/ (last visited Nov. 25, 2025).

73.     Thus, even if certain information (such as driver's license numbers) was not stolen in the data breach, criminals can still easily create a comprehensive "Fullz" package.

74.     Then, this comprehensive dossier can be sold—and then resold in perpetuity—to crooked operators and other criminals (like illegal and scam telemarketers).

75.     The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that their stolen Private Information is being misused, and that such misuse is traceable to the Data Breach.

76.     Victims of identity theft can suffer from both direct and indirect financial losses. According to a research study published by the Department of Justice:

> A direct financial loss is the monetary amount the offender obtained from misusing the victim's account or personal information, including the estimated value of goods, services, or cash obtained. It includes both out-of-pocket loss and any losses that were reimbursed to the victim. An indirect loss includes any other monetary cost caused by the identity theft, such as legal fees, bounced checks, and other miscellaneous expenses that are not reimbursed (e.g., postage, phone calls, or notary fees). All indirect losses are included in the calculation of out-of-pocket loss.[14]

77.     Victims of identity theft also often suffer embarrassment, blackmail, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

78.     In addition to out-of-pocket expenses that can exceed thousands of dollars and the emotional toll identity theft can take, some victims must spend a considerable time repairing the

---

[14] Erika Harrell, *Bureau of Just. Stat.*, U.S. DEP'T OF JUST., NCJ 256085, *Victims of Identity Theft*, 2018 I (2020) https://bjs.ojp.gov/content/pub/pdf/vit18.pdf (last visited Nov. 25, 2025).

damage caused by the theft of their Private Information. Victims of new account identity theft will likely have to spend time correcting fraudulent information in their credit reports and continuously monitor their reports for future inaccuracies, close existing bank/credit accounts, open new ones, and dispute charges with creditors.

79.     Further complicating the issues faced by victims of identity theft, data thieves may wait years before attempting to use the stolen Private Information. To protect themselves, Plaintiff and Class Members will need to remain vigilant for years or even decades to come.

### *Loss of Time to Mitigate the Risk of Identify Theft and Fraud*

80.     As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the asset of time has been lost.

81.     In the event that Plaintiff and Class Members experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

82.     Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate that harm.

83.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as placing "freezes" and "alerts" with credit reporting agencies, contacting financial institutions, closing or modifying financial accounts, changing

passwords, reviewing and monitoring credit reports and accounts for unauthorized activity, and filing police reports, which may take years to discover.

84.     These efforts are consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[15]

85.     Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of Defendant's conduct that caused the Data Breach.

### Diminished Value of Private Information

86.     Personal data like Private Information is a valuable property right.[16] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that Private Information has considerable market value.

---

[15] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited Nov. 25, 2025).

[16] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PRIVATE INFORMATION") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PRIVATE INFORMATION, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

87. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.

88. As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and black markets, has been damaged and diminished in its value by its unauthorized and likely release onto the dark web, where holds significant value for the threat actors.

89. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

### *Future Cost of Credit and Identify Theft Monitoring is Reasonable and Necessary*

90. To date, Defendant has done little to provide Plaintiff and Class Members with relief for the damages they have suffered due to the Data Breach.

91. Given the breach, the type of information involved, and the *modus operandi* of cybercriminals, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; filing false tax returns; taking out loans or insurance; or filing false unemployment claims.

92. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected

fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

93.     Furthermore, the information accessed and disseminated in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, where victims can easily cancel their cards and request a replacement. The information disclosed in this Data Breach is impossible to "close" and difficult, if not impossible, to change (such as Social Security numbers).

94.     Consequently, Plaintiff and Class Members are at a present and ongoing risk of fraud and identity theft for many years into the future.

95.     The retail cost of credit monitoring and identity theft monitoring can cost $200 or more a year per Class Member. This is a reasonable and necessary cost to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

### *Loss of Benefit of the Bargain*

96.     Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain.

97.     Plaintiff and Class Members understood and expected that Defendant maintained adequate data security to protect the Private Information they were required to provide.

98.     In fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services of a lesser value than what they reasonably expected to receive under the bargains struck with Defendant.

### *Plaintiff's Experience*

99.     Plaintiff is a former employee of Defendant.

100.     Plaintiff's PII, including his Social Security number, was in the possession, custody and/or control of Defendant at the time of the Data Breach.

101.     Plaintiff believed that Defendant would take, at a minimum, industry standard precautions to protect, maintain, and safeguard that information from unauthorized use or disclosure, and would timely notify him of any data security incidents related to him.

102.     Plaintiff would not have given his PII to Defendant had he known it would not take reasonable steps to safeguard his PII.

103.     As a result of the Data Breach, Plaintiff has or will make reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit reports, financial account statements, and/or personal records for any indications of actual or attempted identity theft or fraud.

104.     Plaintiff suffered actual injury from having his PII compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his PII, a form of property that Defendant obtained from Plaintiff; (b) violation of his privacy rights; (c) the theft of his PII; and (d) imminent and impending injury arising from the increased risk of identity theft and fraud.

105.     Upon information and belief, as a result of the Data Breach, Plaintiff has experienced a significant increase in spam text messages emails, and calls.

106.     As a result of the Data Breach, Plaintiff is very concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

107.     The Data Breach has caused Plaintiff to suffer anxiety and stress, which has been compounded by the fact that his Social Security number and other intimate details are in the hands

of criminals.

108.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and/or money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for his lifetime.

109.    Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## V.    CLASS ACTION ALLEGATIONS

110.    Plaintiff brings this nationwide class action on behalf of himself and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4).

111.    The Class that Plaintiff seeks to represent is defined as follows:

All individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the Data Breach (the "Class").

112.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

113.    Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

114.    Numerosity: The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. On information and belief, thousands of individuals

will soon be notified by Defendant of the Breach. The Class is apparently identifiable within Defendant's records, and Defendant has already identified these individuals or is in the process of doing so.

115. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

c. Whether and when Defendant actually learned of the Data Breach;

d. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

e. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

f. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

g. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

h. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

i. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

116. <u>Typicality:</u> Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

117. <u>Adequacy:</u> Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

118. <u>Superiority and Manageability:</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

119. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

120. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

121. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

122. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(On Behalf of Plaintiff and the Class)**

123. Plaintiff repeats and re-alleges paragraphs 1-122 in the Complaint as if fully set forth herein.

124. Upon information and belief, Plaintiff and Class Members entrusted Defendant with their PII as a condition of employment or contracted work.

125. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected the PII.

126.     Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

127.     Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and Class Members. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII.

128.     Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

129.     Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

130.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove individuals' PII it was no longer required to retain pursuant to regulations.

131.     Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Class.

132.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

     a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

     b.   Failing to adequately monitor the security of their networks and systems;

c. Failure to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' PII;

e. Failing to detect in a timely manner that Class Members' PII had been compromised;

f. Failing to remove former contractors' and employees' PII it was no longer required to retain pursuant to regulations,

g. Failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages; and

h. Failing to secure its stand-alone personal computers, such as the reception desk computers, even after discovery of the data breach.

133. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

134. Defendant's violation of Section 5 of the FTC Act constitutes negligence.

135. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

136. Defendant's violation of the FTC Act is prima facie evidence of negligence.

137. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses,

which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

138. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

139. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

140. Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

141. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

142. It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

143. Plaintiff and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

144. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

145. Defendant had and continues to have a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was

necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

146.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Class, the PII of Plaintiff and the Class would not have been compromised.

147.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Class. The PII of Plaintiff and the Class was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

148.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

149.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

150.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which

remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

151. Defendant's negligent conduct is ongoing, in that it still holds the PII of Plaintiff and Class Members in an unsafe and insecure manner.

152. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

153. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

154. Plaintiff repeats and re-alleges paragraphs 1-122 in the Complaint as if fully set forth herein.

155. When Plaintiff and Class Members provided their PII to Defendant, Plaintiff and Class Members entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such PII and to timely and accurately notify Plaintiff and Class Members that their PII had been breached and compromised.

156. Defendant required Plaintiff and Class Members to provide and entrust their PII as a condition of obtaining employment or contracted work.

157. Plaintiff and Class Members would not have provided and entrusted their PII to Defendant in the absence of the implied contract between them and Defendant.

158. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

159. Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect the personal information of Plaintiff and Class Members and by failing to provide timely and accurate notice to them that their PII was compromised in and as a result of the Data Breach.

160. As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

161. Plaintiff repeats and re-alleges paragraphs 1-122 in the Complaint as if fully set forth herein.

162. This count is pleaded in the alternative to the breach of implied contract count above (Count II).

163. Plaintiff and Class Members conferred a monetary benefit to Defendant when they provided their PII to Defendant.

164. Defendant knew that Plaintiff and Class Members conferred a monetary benefit to it, and it accepted and retained that benefit. Defendant profited from this monetary benefit, as the transmission of Plaintiff and Class Members PII to Defendant from its contractors and employees is an integral part of Defendant's business. Without collecting and maintaining Plaintiff's and Class Members' PII, Defendant would be unable to have contractors and employees and conduct business.

31

165. Defendant was supposed to use some of the monetary benefit provided to it by its contractors and employees at Plaintiff's and Class Members' expense to secure the PII belonging to Plaintiff and Class Members by paying for costs of adequate data management and security.

166. Defendant should not be permitted to retain any monetary benefit belonging to Plaintiff and Class Members because Defendant failed to implement necessary security measures to protect the PII of Plaintiff and Class Members.

167. Defendant gained access to the Plaintiff's and Class Members' PII through inequitable means because Defendant failed to disclose that it used inadequate security measures.

168. Plaintiff and Class Members were unaware of the inadequate security measures and would not have entrusted their PII to Defendant had they known of the inadequate security measures.

169. To the extent that this cause of action is pleaded in the alternative to the others, Plaintiff and Class Members have no adequate remedy at law.

170. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remain backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

171. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including,

but not limited to, anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses.

172. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds from the monetary benefit that it unjustly received from them.

**COUNT III**
**DECLARATORY JUDGMENT**
(**On Behalf of Plaintiff and the Nationwide Class**)

173. Plaintiff repeats and re-alleges paragraphs 1-122 in the Complaint as if fully set forth herein.

174. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

175. An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII. Plaintiff alleges that Defendant's data security measures remain inadequate. Furthermore, Plaintiff continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in future.

176. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Defendant owes a legal duty to secure PII and to timely notify consumers of a data breach under the common law, Section 5 of the FTCA; and

b. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure PII.

177. If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and he will be forced to bring multiple lawsuits to rectify the same conduct.

178. The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

179. Issuance of the requested injunction will not disserve the public interest. In contrast, such an injunction would benefit the public by preventing another data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiff and other individuals whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

A. Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

B. Certifying the Class as requested herein, designating Plaintiff as Class representatives, and appointing Plaintiff's counsel as Class Counsel;

C. Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, nominal damages and disgorgement;

D.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the class, seek appropriate injunctive relief designed to prevent Defendant from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

E.    Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

F.    Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

G.    Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 25, 2025,                    Respectfully submitted,

By /s/: *Gary M. Klinger*
Gary M. Klinger
**MILBERG PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (866) 252-0878
gklinger@milberg.com


*Attorney for Plaintiff and the Putative Class*